BOWES, Judge.
Plaintiff-appellant Andy Detillier (hereinafter Detillier) appeals a judgment of the district court dismissing his “rule to show cause” praying that his position as assistant chief of police and his salary as such be reinstated. We reverse and remand.
Detillier was employed by the police department of the Town of Gramercy as a deputy marshall on March 1, 1984. Later that same year, he was appointed assistant chief of police and received periodic salary increases through 1987. On February 4, 1988, Mayor Anthony Calcagno of Gramer-cy called a special meeting of the mayor and Board of Aldermen (of Gramercy) to discuss an estimated over expenditure of $8,432.00 within the budget of the Police Department. The minutes of that meeting reveal that Chief of Police Nicholas Lass-eigne was present and was asked for suggestions as to how expenditures could be reduced within his department. The minutes reflect that Lasseigne had no ideas, but that the mayor and Alderman Herman Bourgeois suggested salary reductions, reductions in force, increasing fines, reducing hours, and similar proposals. Lasseigne was given until the regular meeting of February 8, 1988, to present his suggestions.
The minutes of that February 8th meeting state that Lasseigne did offer several suggestions, including elimination of the position of dog catcher and elimination of a part-time officer's salary:
“It was decided that the Board would look at complete expenditure figures through the month of January, and a revised projection of estimated expenditures for the remainder of the fiscal year. A special meeting would be called in two weeks to further discuss the Police Department budget.”
The special meeting was held on February 18. Mayor Calcagno estimated the over expenditure for the fiscal year ending June 30,1988, would be $8,882.00. According to the minutes:
“Chief of Police Nicholas Lasseigne, Jr., once again said that the projected over expenditure is due to a one shot deal of payment of accumulated comp time and the purchase of two police cars. He suggested that the retirement of one part-time officer would help, even though it would only be a little. He also stated that he does not want to reduce his force or layoff any employees.
[[Image here]]
After some discussion, Mr. LeBlanc made the following suggestions:
Retirement of one officer Savings $1,700
Eliminate part-time officer 240
Eliminate overtime 1,350
Payroll taxes, etc., on overtime 100
Total estimated savings $3,390
Mr. LeBlanc said that considering the above savings the estimated over expenditure would then be approximately $5,500. This over expenditure could be eliminated by adjusting salaries for the next five months. Salaries could then be adjusted back to normal at the beginning of the next fiscal year on July 1, 1988.
After further discussion it was moved by Mr. Detillier, second [sic] by Mr. Hy-mel, and approved that expenditures within the Police Department be reduced by $5,500 for the balance of the present fiscal year, and that such reductions be recommended by the Chief of Police to the Board of Aldermen.”
On March 7, 1988, another special meet ing was called at which time Mayor Calcag-no introduced a resolution to adjust the budget of the police department. The resolution stated in pertinent part that the chief of police had failed to submit “his plan for reducing the expenditures in writing no later than the 22nd of February, 1988_” Therefore, in accordance with LSA-R.S. *629 39:1310, the mayor proposed the following in order to balance the budget:
“1. Lay off an officer in accordance with the Town of Gramercy’s Personnel Policy as adopted.
2. Retire the senior part-time deputy.
3. Abolish the position of assistant chief of police and utilize the man as a regular full time officer and reduce his monthly salary by 19.2%.”
Lasseigne then informed the mayor and aldermen that he and his men decided that the best way to reduce expenditures was to take a “voluntary lay-off” for one month. This suggestion was poorly received and the group finally voted only the first two items of the resolution and, for item number 3, it was voted to institute an across-the-board pay cut for the remaining two officers and “Alderman Herman Bourgeois would donate $400.00 to the Town to be applied to the Police Department’s budget.”
The amended resolution was adopted.
On March 14, 1988, the minutes of the regular meeting reflect that Mr. Bourgeois had “second thoughts” about the across-the-board cut in salary, as well as about his donation of $400.00 and wanted to amend the previously-adopted resolution to delete these items, and, instead, substitute the original proposal of demoting Detellier and reducing his salary by 19.2%. These proposals were adopted; the mayor and Board of Aldermen effectively demoted Detillier without further reasons, written or otherwise.
Detillier filed a rule alleging that this action violated the Town’s personnel policy ordinance and alleged that illegal secret meetings had taken place in which these decisions had been made. Detillier sought a declaratory judgment in his favor and a writ of mandamus ordering the Town of Gramercy to reinstate him and his former salary. (He also asked that the mayor and aldermen be enjoined from holding future secret meetings — however, this is not pertinent to the matters before us). The trial court dismissed the action following trial on the merits, and Detillier has appealed.
On appeal, Detillier urges that in November of 1987, the Town of Gramercy adopted an ordinance titled “Town of Gramercy — Personnel Policy”, which sets out in detail exclusive procedures for employment, demotion, suspensions, and reductions in pay of all town employees, including those of the police department. Detillier cites the following provisions of the personnel policy:
“Section III — Employment Policy
[[Image here]]
B. 3
DEMOTION: An employee may be demoted voluntarily or for cause upon recommendation of the Mayor, or in the case of the Police Department the Chief of Police. A written statement of the reason for the demotion for cause shall be submitted to the Town Clerk and the employee affected prior to the effective date of the action. [Emphasis supplied] Section YII — Separations, Suspension, and Layoffs
[[Image here]]
B. LAYOFFS
1. The Mayor, or in the case of the Police Department, the Chief of Police, may reduce the work force or lay off employees because of a lack of work or because of insufficient funds. Quality of performance and length of service shall be taken into account in reductions of the work force.
Detillier asserts that the action of the mayor and the aldermen violated this ordinance because the chief of police did not recommend the demotion and reduction in pay and because no written reasons were given as required. We agree.
Mayor Calcagno testified at trial that the sole reason for Detillier’s demotion and reduction in pay was the budgetary crisis. The ordinance distinguishes, in several places, the power of the mayor regarding personnel matters within the police department. The above quoted passages of the ordinance gives the chief of police authority to suspend an employee with or without pay; the chief determines the method for filling any vacancies within his department. *630 Any employee may be dismissed by the Board of Aldermen upon recommendation of the department head for cause. Detillier obviously was not demoted for cause by the police chief, but because of budgetary restrictions by the mayor and aldermen.
We find that the ordinance clearly means to permit the chief of police to make the major personnel decisions within his department. The applicable section here appears to be Section 7(B)(1), which gives the chief authority to reduce the work force or lay off employees because of insufficient funds. The policy-ordinance does not directly address this issue of reduction in pay because of budgetary problems. The only portion of the ordinance which deals with insufficient funds is 7(B)(1) above. It appears evident that the ordinance gives only the chief of police authority to make personnel adjustments within his department when the problem is a budgetary restriction.
Appellees claim authority for the mayor and aldermen to demote Detillier and reduce his pay from LSA-R.S. 39:1301 et seq., specifically invoking R.S. 39:1310. That statute reads as follows:
§ 1310. Budgetary authority and control
A.The adopted budget and any duly authorized adopted amendments shall form the framework from which the chief executive or administrative officers and members of the governing authority of the political subdivision shall monitor revenues and control expenditures. The chief executive or administrative officer shall advise the governing authority or independently elected official in writing when:
(1) Revenue collection plus projected revenue collections for the remainder of the year, within a fund, are failing to meet estimated annual budgeted revenues by five percent or more.
(2) Actual expenditures plus projected expenditures for the remainder of the year, within a fund, are exceeding the estimated budgeted expenditures by five percent or more.
(3)Actual beginning fund balance, within a fund, fails to meet estimated beginning fund balance by five percent or more and fund balance is being used to fund current year expenditures.
B. The written notification as required by this Section, as well as any responsive action taken by the governing authority or independently elected official shall be transmitted to and retained by the chief executive or administrative officer.
C. The adopted budget and any duly authorized amendments thereto, shall constitute the authority of the chief executive or administrative officers of the political subdivision to incur liabilities and authorize expenditures from the respective budgeted funds during the fiscal year.
D. Nothing in this Chapter shall prevent the making of contracts for governmental services or for the capital outlay for a period exceeding one year if such contracts are allowed otherwise by law. Any contracts so made shall be exec-utory only for the amounts agreed to be paid for such services to be rendered in succeeding years.
There is nothing in the record relative to five per cent over expenditures which would invoke this section. More importantly, however, we find nothing in this statute which permits the Town of Gramercy to supercede its personnel policy/ordinance in the manner in which it was done in the present case. We agree that this section, read in its entirety, compels the Town to present a balanced budget, but we are unable to discern in these statutes an intent by the legislature to dictate a formula by which the political subdivision must accomplish such a balance. R.S. 39:1303 states in applicable part:
The provisions of this Chapter shall be construed as minimal requirements and shall not prevent a political subdivision from requiring more extensive financial planning and budgeting practices nor from imposing more stringent penalties for violations.
R.S. 39:1304(D) holds as follows:
*631 D. A budget proposed for consideration by the governing authority shall be accompanied by a proposed budget adoption instrument. The budget adoption instrument for independently elected parish offices shall consist of a letter from the independently elected official authorizing the implementation of the adopted budget. The budget adoption instrument for any municipality, parish, school board, or special district shall be an appropriation ordinance, adoption resolution, or other legal instrument necessary to adopt and implement the budget document. The adoption instrument shall define the authority of the chief executive and administrative officers of the political subdivision to make changes within various budget classifications without approval by the governing authority, as well as those powers reserved solely to the governing authority. [Emphasis supplied]
We conclude from these portions of the Budget Act that the governing authority has the latitude to formulate methods by which it shall determine specific budgeting practices, such as those involved in the case at bar. Here, the Town of Gramercy delegated to the mayor, or in the case of the police department, the chief of police, power to adjust the work force because of insufficient funds. Such is not forbidden in the cited statutes.
However, we cannot find authority for the Town of Gramercy to ignore its own established procedures, established by ordinance, for balancing the budget simply because those procedures have proven unsuccessful in the present instance. Certainly, the Town of Gramercy may amend its ordinance so as to permit the mayor and aldermen to demote police personnel and/or to reduce police salaries because of insufficient funds. We are unable to interpret the resolution in question as an express or implied amendment of the ordinance. That the mayor and aldermen were aware of the necessity of complying with the ordinance is clear — the minutes reflect motions by the Board of Aldermen to have certain reductions recommended by the chief. Rather, there is indicated in the record an inability by the mayor and the Board to resolve the budgetary problem through the legally prescribed method.
There is nothing in the personnel ordinance or the Revised Statutes 39:1301 et seq. which permits the mayor and Board to bypass the chiefs authority if he has not made recommendations suggested by them, within a certain period of time. Yet, this is the stated reason for the resolution.
We hold that appellees were obliged, by virtue of the document designated as the “Town of Gramercy — Personnel Policy,” which is an ordinance, to follow the procedures dictated therein relative to demotion and reduction in the pay of Detillier and to permit the chief of police to make such determinations. Therefore, we find that appellees violated the ordinance when they demoted Detillier and reduced his salary and the trial court erred in dismissing De-tillier’s action.
Because we are unable to determine from the record the extent of relief to which plaintiff is entitled, the case is remanded back to the district court for further proceedings consistent with this opinion.
Appellees are taxed with all costs of this appeal.
REVERSED AND REMANDED.